IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS A. MCNICHOLS, THOMAS W. MCHNICHOLS, EDWARD MCNICHOLS, and MICHAEL PORN, individually, | ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 18 C 2125 |
| v. | ) ) | Judge Virginia M. Kendall |
| TOM WEISS, MARCIE WEISS, ROBERT WEISS, MICHAEL PATIERNO, and BEVERAGE BLOCKS, INC., a Florida Corporation, | ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas A. McNichols, Thomas W. McNichols, Edward McNichols, and Michael Porn filed a four-count First Amended Complaint accusing defendants Tom Weiss, Marcie Weiss, Robert Weiss, Michael Patierno, and Beverage Blocks, Inc. of: (I) fraudulent misrepresentation and inducement; (II) conversion; (III) aiding and abetting fraud; and (IV) conspiracy. Defendants moved to dismiss the First Amended Complaint (the "Complaint"), claiming Counts I, III, and IV failed to sufficiently meet Rule 9's heightened pleading standards and Count II was facially defective. Defendants also argued that Drink Blocks LLC ("Drink Blocks") is a necessary party under Rule 12(b)(7), destroying diversity jurisdiction such that this Court should dismiss the case. For the reasons provided herein, the Court grants the defendants' motion in part and denies it in part.

1

## BACKGROUND

Plaintiffs allege Defendants schemed to defraud Plaintiffs into investing and loaning $325,000 to Drink Blocks, a business started by Defendants, which used stolen intellectual property and proprietary information. (Dkt. 1 at ¶ 1.) Drink Blocks sold stackable drink boxes, which were originally invented by Theodore A. Stoner. *Id.* at ¶ 10. Stoner had previously filed a series of applications for "INTERLOCKING DRINK CONTAINERS." *Id.* To develop, market, and sell these interlocking drink containers, Stoner also formed an entity, PlayCycle, LLC. *Id.*

Defendant Tom Weiss reached out to Stoner to discuss partnering with him to sell the stackable drink boxes. *Id.* at ¶ 11. In October 2012, Weiss entered into an agreement with PlayCycle to use Stoner's business plans and marketing materials to develop, sell, and market the drink containers. *Id.* at ¶ 12. The parties entered into a confidentiality agreement, which provided Stoner would share certain elements of his patented designs with Weiss. *Id.* at ¶ 13. The agreement also contained a non-compete covenant between PlayCyle and Weiss. *Id.* at ¶ 14.

In July 2013, Tom and Marcie Weiss, with the financial backing of Michael Patierno, created Drink Blocks, LLC. *Id.* at ¶ 15. Drink Blocks filed for patents under the name "STACKABLE SLIDER TOY BLOCK." *Id.* at ¶ 16. This directly violated Tom Weiss's PlayCycle agreement because it contained proprietary and confidential information owned by Stoner and PlayCycle. *Id.* at ¶¶ 15–16.

That year, Weiss contacted Plaintiff Thomas A. McNichols to invest in Drink Blocks. *Id.* at ¶ 18. In these conversations, Weiss explained the company, its patents, new contracts, strategic plans, and investment opportunities. *Id.* The McNichols plaintiffs eventually agreed to loan Drink Blocks a total of $200,000, which was to be repaid in several installments. *Id.* at ¶ 19. The first installment was due in 2014 and the second was due in 2015. *Id.* In March 2014, the McNichols

2

plaintiffs loaned the Weiss defendants $100,000 in exchange for a membership interest and the repayment of their loans based on a delineated schedule. *Id.* at ¶ 22. In 2014, Tom Weiss persuaded Plaintiff Michael Porn to invest $125,000 in Drink Blocks. *Id.* at ¶ 21. Weiss promised Porn a position on the Board of Advisors in return for his investment, which would not be diminished without his consent. *Id.*

Ultimately, Drink Blocks never repaid the loans to the McNicholses or Porn. *Id.* at ¶¶ 19, 22. In late January 2017, Marcie Weiss and Tom Weiss entered into a Consent Agreement and unilaterally closed the business. *Id.* at ¶ 24. The Plaintiffs received a letter from Tom Weiss stating that he was shutting down the business because Drink Blocks was facing financial and operational distress and the company's lender foreclosed on substantially all its assets. *Id.* at ¶ 25. Meanwhile, there was a lawsuit pending in Florida, where Stoner was suing Tom Weiss and Drink Blocks for a correction of patent inventorship, breach of contract, and other claims. *Id.* at ¶ 35; *see* Exhibit A to the First Amended Complaint. The Plaintiffs now allege that the Weiss defendants personally collected the $350,000 they invested in Drink Blocks. *Id.* at ¶ 27.

Just six months before the business closed, Marcie and Tom Weiss assigned all the Drink Blocks patents to a new entity, Beverage Blocks, Inc., formed by Michael Patierno, the "uncle" or close family friend of the Weiss Defendants. *Id.* at ¶¶ 24, 28, 31. Patierno worked with Tom Weiss to close down Drink Blocks, transfer all its assets to Patierno's entity, and wipe out all its loans and debts. *Id.* at ¶ 29. Drink Blocks and Tom Weiss assigned twelve patents to Beverage Blocks in total. *Id.* at ¶ 36. According to patent assignments and the Drink Blocks website, the two companies are one in the same and market themselves as such. *Id.* at ¶ 37. However, the California Secretary of State dissolved Drink Blocks for the years 2015 and 2017. *Id.* at ¶ 2, n.1.

3

Plaintiffs now allege that Defendants formed Beverage Blocks to prevent Plaintiffs from seeking rescission of their investments and from obtaining relief for Defendants' wrongdoing. *Id.* at ¶ 39. In October 2016, Plaintiffs sent Defendants a default notice regarding the unpaid loans and status of Drink Blocks, including its assets, patents, products, and operations. *Id.* at ¶ 40. Plaintiffs subsequently sued. *Id.* at ¶ 41.

## **LEGAL STANDARD**

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. *Christiansen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). For purposes of a motion to dismiss, the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)). To survive dismissal, a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

"Specific facts are unnecessary, but the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, a "plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusion." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citation omitted). The Court reads the complaint

4

and assesses its plausibility in its entirety. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

When a complaint alleges fraud, the heightened pleading standard in Rule 9(b) applies, rather than the liberal standard required under Rule 8. *See* Fed R. Civ. P. 9(b); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011); *Graue Mill Dev. Corp. v. Collonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 992 (7th Cir. 1991). Specifically, Rule 9(b) requires that the complaint must plead allegations of fraud with particularity. *See* Fed. R. Civ. P. 9(b); *Pirelli,* 631 F.3d at 441–42.

## **DISCUSSION**

Plaintiffs assert four claims against Defendants: fraudulent misrepresentation and inducement, conversion, aiding and abetting fraud, and conspiracy. Defendants argue that these claims are derivative in nature and belong to Drink Blocks because any damage resulting from tortious conduct did not individually damage Plaintiffs. (Dkt. 49 at 4–5; Dkt. 53 at 3.) In Defendants' view, that makes Drink Blocks a necessary party. Plaintiffs contend that they have alleged a direct action, not a derivative action, and therefore Drink Blocks is not a necessary party (Dkt. 51 at 3.) If joinder of Drink Blocks as a party to this case is not required under Rule 19, Plaintiffs' claims may proceed. However, if Rule 19 requires joining Drink Blocks, then diversity would be destroyed and Defendants claim that the case should be dismissed under Rule 12(b)(7). *Id.* Because this issue determines whether the Court can examine the substance of Plaintiffs' claims, the Court first addresses Defendants' Rule 12(b)(7) motion to add Drink Blocks as a necessary party to the action.

5

I.  **Rule 12(b)(7) Motion: Failure to Join a Necessary and Indispensable Party**

In a diversity case such as this one, the "nature of the interest sought to be enforced is determined by state substantive law . . . [and] the issues of joinder and whether or not the court should proceed in the absence of an interested party are matters of federal law." *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). To determine whether a complaint must be dismissed for failure to join a required party under Rule 19, the court uses a two-part test. *See Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 635 (7th Cir. 2009).

The first question is whether the party is necessary under Rule 19(a). *See id.* An absent party must be joined if joinder is feasible and "(1) the court cannot accord complete relief among the existing parties in the party's absence, (2) the absent party's ability to protect an interest relating to the subject of the action will be impaired, or (3) an existing party would be subject to a substantial risk of multiple or inconsistent obligations if the absent party is not joined." *See, e.g., XPO Logistics, Inc. v. Gallatin*, 2013 WL 3835358, at *2 (N.D. Ill. July 24, 2013) (citing Fed. R. Civ. P. 19(a)(1)).

Second, if the party is necessary but joinder is not feasible, usually because joining the parties would destroy diversity, the court must then decide if the party is indispensable, deciding "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *see Askew*, 583 F.3d 635. The court looks to the "prejudice to the existing parties, the adequacy of a judgment that would be rendered without the absent party, and whether the plaintiff would have an adequate remedy if the action were dismissed." Fed. R. Civ. P. 19(b)(1)–(4); *see, e.g., XPO Logistics*, 2013 WL 3835358 at *2. The movant bears the burden of establishing that the party sought to be joined is a necessary and

indispensable party under Rule 19. *See, e.g., Florian v. Sequa Corp.*, 2002 WL 31844985, at *3 (N.D. Ill. Dec.18, 2002); *McGee v. Dresnick*, 2005 WL 6244201, at *1 (N.D. Ill. Aug. 24, 2005).

A corporation is a necessary party to a derivative action brought on its behalf by a shareholder. *See Meyer v. Fleming*, 327 U.S. 161, 167 (1946); *Metropolitan Sanitary District of Greater Chicago ex rel. O'Keeffe v. Ingram Corp.*, 85 Ill. 2d 458, 472 (1981); *see also Davis v. Dyson*, 387 Ill. App. 3d 676, 683 (2008) (explaining that "[a] derivative suit technically consists of two causes of action: one against the board of directors for failing to sue, and the other based upon the corporate right that was allegedly violated."). A derivative action is one in which he shareholder alleges an injury or breach of duty to the corporation. *See Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996) (citing *Principles of Corporate Governance: Analysis and Recommendations* § 7.01 (1992)). A shareholder may maintain a direct action in an individual capacity where the corporation has not suffered an injury or breach of duty. *Id.* But if the injury flows to all investors, the action is derivative. *Id.* (citing *Seinfeld v. Bays*, 230 Ill. App. 3d 412 (1st Dist. 1992)).

To maintain a direct action, the shareholder must allege something more than an injury to the corporation. *See Goldberg v. Michael*, 328 Ill. App. 3d 593, 599 (2002) (explaining that plaintiffs must have experienced direct harm, otherwise they have no right to sue individually). In other words, the shareholder "must allege an injury that is 'separate and distinct from that suffered by other shareholders,' or an injury that involves a contractual right that exists independently of any corporate right." *Davis*, 387 Ill. App. 3d at 688 (citing *Caparos v. Morton*, 364 Ill. App. 3d 159, 167 (2006)).

Here, the injury to Plaintiffs was individual and does not affect the corporate body, thus they can pursue their suit in their individual capacities. The Plaintiffs allege they individually

7

loaned and invested $325,000 in Drink Blocks. (Dkt. 1 at ¶ 1.) They claim they loaned this money because of the fraudulent statements made by Defendants, and as a result, their loan debt is outstanding. *Id.* at ¶¶ 61–62, 64–68, 70, 80. Michael Porn argues Defendants similarly damaged him because they never repaid him his investment, and if he had known Weiss's statements were false, he would have acted earlier to rescind his investment agreement. *Id.* at 62. Plaintiffs allege a personal, contractual right to repayment of their loans to Drink Blocks, due to the fraudulent statements made by the Defendants. *Id.* at 22. This right exists separately from other shareholders—it belongs solely to Plaintiffs as individual investors. Therefore, the action is direct in nature, not derivative.

The additional 19(a) factors show that Drink Blocks is unnecessary to resolve this lawsuit. First, joinder of Drink Blocks is unnecessary to accord Plaintiffs with complete relief. Second, having been dissolved, Drink Blocks no longer legally exists, and its interest will not be impaired if it is not joined to the action. Third, Drink Blocks' absence does not subject it to the risk of inconsistent obligations. *See McGee v. Dresnick*, 2005 WL 6244201, at *5 (N.D. Ill. Aug. 24, 2005) (concluding that because the injury was personal to the Plaintiff, the LLC was not a necessary and indispensable party). Because adding Drink Blocks is unnecessary under Rule 19(a), the Court need not analyze Rule 19(b). Accordingly, the Court denies Defendants' Rule 12(b)(7) motion to dismiss.

II.     **Rule 12(b)(6) Motion: Common Law and Promissory Fraud (Count I)**

Plaintiffs assert that in a scheme to defraud them, Defendants made false and deceitful statements regarding Defendants' business, marketing, stolen patents, and sales to induce Plaintiffs into investing in Drink Blocks. *Id.* at ¶¶ 45–50; (Dkt. 51 at 7–10.) Plaintiffs claim that Defendants knew these statements were false and they continued to make these representations even after the

8

Plaintiffs invested and loaned Drink Blocks $325,000. (Dkt. 1 at 50–52.) Plaintiffs further allege that Defendants' statements that Drink Blocks was unable to repay the debt were false because Defendants never really intended to repay the loans in the first place, and had they known these statements were false, Plaintiffs would have sought rescission of their contract earlier. *Id*. at 52–62. Defendants move to dismiss Count I under Rule 9(b) because Plaintiffs failed to plead fraud with particularity. (Dkt. 49 at 6.) Defendants argue that Plaintiffs did not adequately plead reliance, causation, and damages. *Id*. at 8. Additionally, Defendants state that Plaintiffs's claim is legally insufficient under Illinois law. *Id*. at 6.

### A. Particularity

Rule 9(b) imposes a higher pleading standard than Rule 8 does. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Specifically, pleadings must state with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b); *Pirelli*, 631 F.3d at 441–42. This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted); *see also Pirelli*, 631 F.3d at 441–42. However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity "is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli*, 631 F.3d at 441. One of the primary purposes of Rule 9(b) is to ensure that "defendants receive fair notice of the particular circumstances underlying plaintiff's fraud claims." *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975).

In moving to dismiss Plaintiff's fraud claim, the Defendants state that Plaintiffs' allegations are conclusory and contain vague references to time. (Dkt. 49 at ¶¶ 6–7.) However, a plaintiff

9

may approximate when alleging the time period during which the misrepresentations and omissions were allegedly made. *See, e.g.*, *Hernandez v. Childers*, 736 F. Supp. 903, 912 (N.D. Ill. 1990); *Onesti v. Thomson McKinnon Securities, Inc.*, 619 F. Supp. 1262, 1265 (N.D. Ill. 1985). Here, Plaintiffs appropriately identified a time frame during which defendants made these false representations: prior to the McNichols Plaintiffs extending the loans between 2013 and 2015 and Porn tendering the funds. *Id.* at ¶¶ 20–22, 55–62. Additionally, the Complaint specifically identifies what the Defendants falsely represented and when: the Defendants falsely stated they owned the patents for Drink Blocks products, they could not repay the debt owed to Plaintiffs, and they had impending and recent deals that would produce revenue. (Dkt. 1 at ¶¶ 48–60.) Although the Plaintiffs do not pinpoint a specific location where these conversations were had (many via telephone or email) or an account where the funds were placed, the parties reside in different states, and the allegation that conversations took place in "various locations in the United States" is sufficient. Plaintiffs satisfied Rule 9(b)'s requirement to identify the "who, what, when, where and how" of their fraud claim.

    **B.**     **Legal Sufficiency**

Defendants also argue that Plaintiffs failed to adequately plead the reliance element of fraud, and thus their claim is forward-looking and subsequently falters under the promissory fraud rule. (Dkt. 49 at 6.) In response, Plaintiffs allege that they stated a claim for common law fraud, and additionally assert that even if their fraud claim is forward looking, promissory fraud claims are actionable in Illinois. (Dkt. 51 at 7.) Because there are backward and forward-looking facts alleged, the Court will analyze both common law fraud and promissory fraud to determine whether Plaintiffs have stated claims under either type of fraud. *See, e.g.*, *Swervo Entertainment Group LLC v. Mensch*, 2017 WL 1355880, at *5 (N.D. Ill. April 13, 2017) (citing *Triumph Packaging*

*Grp. v. Ward*, 877 F. Supp. 2d 629, 644–46 (N.D. Ill. 2012) (explaining that if a complaint alleges a claim for common law fraud, a court can "nevertheless treat the claim as one for promissory fraud if the claim is more accurately characterized as such under state law.").

To state a claim for common law fraud, a plaintiff must allege the following elements: (1) a false statement of material fact; (2) the defendant knew the statement was false; (3) the defendant intended that the statement induce the plaintiff to act; (4) the plaintiff relied upon the truth of the statement; and (5) the plaintiff suffered damages from his reliance on the statement. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996). The plaintiff must also "allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Id.* at 496–97; *see also Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 771 (2007).

The main difference between common law fraud and promissory fraud is temporal. Common law fraud involves a false statement of existing or past fact, while promissory fraud involves a false statement of intent regarding future conduct of the defendant. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012). Generally, promissory fraud is not actionable in Illinois. *Id.* However, there is an exception to this rule when "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." *See, e.g., Triumph Packaging Grp.*, 877 F. Supp. 2d at 645 (explaining the Illinois exception to the general rule that statements regarding future events are not a proper basis for fraud). To properly invoke the exception, the plaintiff must point to "a pattern of fraudulent statements" or "one particularly egregious fraudulent statement." *Wigod*, 673 F.3d at 570. Further, the claim must allege a "specific, objective manifestation of the defendant's fraudulent intent not to keep the promise at

11

the time the promise was made." *See, e.g., Swervo Entertainment Group* LLC, 2017 WL 1355880 at *5 (citing *Wigod*, 673 F.3d at 570 and *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992)).

In this case, Plaintiffs sufficiently alleged a claim for common law fraud because the Complaint asserts specific statements the Defendants made to induce Plaintiffs to invest in their business. Plaintiffs properly pled reliance and causation because but for Defendants' false statements, Plaintiffs would not have invested their money in Drink Blocks. (Dkt. 1 at ¶¶ 61–62.) As a direct result of relying on the false statements in investing, Defendants were not paid back the $325,000 they were owed. *Id.* Plaintiffs outlined a cause of action for fraud and pled more than conclusory allegations, therefore they have stated a cause of action for common law fraud.

Plaintiffs also adequately stated a claim for promissory fraud. Plaintiffs allege that they relied on Defendants' statements in continuing to invest in Drink Blocks and simultaneously not rescinding their agreements and investments. *See id.* Specifically, Defendants allege that in mid-late 2016, Robert Weiss told them that he secured a royalty deal in South Korea that would bring in over $1 million to the company, helping Drink Blocks to repay their loans. *See id.* at 54–57. He said as much on more than one occasion. *See id.* at 55. Plaintiffs relied on the truth of these statements and thought that the business was healthy enough that defendants would repay them their loans. *See id.* at 61–62. Plaintiffs consequently contend that Defendants never truly intended to return their investment. Taking these allegations in the light most favorable to Plaintiffs, the Complaint plausibly alleges that Defendants engaged in a fraudulent scheme to induce Plaintiffs to keep their investments in Drink Blocks. This is sufficient to state a claim for promissory fraud. Therefore, the Court denies Defendants' motion to dismiss Count I.

### III. Rule 12(b)(6) Motion: Conversion (Count II)

Plaintiffs alleged a claim of conversion against Marcie, Robert, and Tom Weiss for failing to return their investment and loan funds. (Dkt. 1 at ¶¶ 63–68.) Defendants argue that that the conversion claim fails to state a cause of action because Plaintiffs' loans were not specific, identifiable funds. (Dkt. 49 at 10–11.)

To state a claim for conversion under Illinois law, Plaintiffs must allege that (1) they have a right to the property; (2) they have an absolute and unconditional right to the immediate possession of the property; (3) they made a demand for possession; and (4) Defendants wrongfully and without authorization assumed control, dominion, or ownership over the property. *See Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998); *see, e.g.*, *Triumph Packaging Grp. v. Ward*, 877 F. Supp. 2d 629, 649 (N.D. Ill. 2012). In Illinois, "[t]he subject of conversion must be an identifiable object of property." *See, e.g.*, *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 793 (N.D. Ill. 1997) (citing *In re Thebus*, 108 Ill. 2d 255 (1985)).

However, an action for conversion of funds may not be maintained to satisfy the mere obligation to repay money. *See In re Thebus*, 108 Ill. 2d 255, 260 (1985). The Illinois Supreme Court explains that "the general rule is that conversion will not lie for money represented by general debt or obligation. It must be shown that money claimed or its equivalent, at all times belongs to plaintiff, and that defendant converted it to his own use." *Id.* at 483. Put differently, the money owed must be capable of being described as a specific chattel. *See Sandy Creek Condo. Ass'n v. Stolt and Egner, Inc.*, 267 Ill. App. 3d 291, 204 (1994). For example, the common law recognizes negotiable instruments such as checks as identifiable objects of property. *See, e.g.*, *Great Lakes Higher Educ. Corp.*, 837 F. Supp. at 897 ("Illinois courts do recognize a cause of action for conversion of commercial paper, such as a check, on the theory that the intangible

13

right is merged into the specific document."); *In re Oxford Marketing, Ltd.*, 444 F. Supp. 399, 404 (N.D. Ill. 1978) (same).

Further, Illinois courts hold "that payments to a defendant of a specific, identifiable amount[ ], kept separate from a general fund, can constitute conversion." *See, e.g., Marc Dev., Inc. v. Wolin*, 904 F. Supp. 777, 794 (N.D. Ill. 1995) (citing *Addante v. Pompilio*, 303 Ill. App. 172 (1940) (stating a cause of action for conversion because the defendant failed to transmit a specific amount of money given to him by plaintiff to a third party)). In addition to proving that their right to the money was absolute and unconditional, the plaintiff must show that "the money claimed, or its equivalent, *at all times* belonged to the plaintiff." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (quoting *In re Thebus*, 483 N.E.2d at 1261)).

Here, Plaintiffs alleged a determinable amount of money owed to them—$200,000 to the McNichols and $125,000 to Michael Porn. (Dkt. 1 at ¶ 19, 21–22.) The $325,000 total is a specific and identifiable quantity capable of being the subject of conversion. However, Plaintiffs do not indicate that the loan absolutely and unconditionally belonged to them at all relevant times. *See, e.g., Swervo Entertainment Group, LLC v. Mensch*, 2017 WL 1355880, at *3 (N.D. Ill. April 13, 2017). A delineated repayment schedule dictated their right to receive the funds. (Dkt. 1 at ¶ 22.) Because repayment was due over time, the right to the possession of the property was not always immediate. *Id.* at ¶ 19. Further, the Complaint continuously uses the terms loan and investment interchangeably. The Complaint is devoid of any specific allegations of the terms of the loan or investment and whether they in fact had a right to repayment. Accordingly, the Court grants Defendants' motion to dismiss Count II without prejudice.

14

## IV. Rule 12(b)(6) Motion: Aiding and Abetting Fraud (Count III)

Next, Plaintiffs allege an aiding and abetting fraud claim against Defendants Michael Patierno and Beverage Blocks. (Dkt. 1 at ¶¶ 69–77.) To state a claim for aiding and abetting fraud, a plaintiff must allege:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provided the assistance; and (3) the defendant must knowingly and substantially assist the principal violation.

*Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27–28 (2003) (internal quotations omitted) (citing *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496 (1987)). A claim for aiding and abetting fraud must also satisfy Rule 9(b)'s heightened pleading standard. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).

Specifically, Plaintiffs state that Michael Patierno shut down Drink Blocks and formed a new entity, Beverage Blocks, to rid the company of its liabilities, which inevitably prevented the Plaintiffs from recovering their funds. (Dkt. 1 at 69–77.) Because of these actions, Plaintiffs allege Patierno furthered the Weiss Defendants's scheme to defraud them. *Id.* The Complaint alleges that "Patierno and Beverage blocks were aware of their role as part of the overall tortious activity of the Weiss Defendants" and that they "substantially assisted in the principal violation, fraud." *Id.* at 76–77. But these statements merely recite the second and third elements of aiding and abetting fraud. Without more, these allegations do not meet Rule 9's elevated pleading standard, and the Court must grant Defendants' motion to dismiss Count III.

## V. Rule 12(b)(6) Motion: Conspiracy (Count IV)

Plaintiffs allege that all Defendants acted in concert to defraud Plaintiffs into investing in Drink Blocks and to induce Plaintiffs from seeking rescission of their investments. (Dkt. 1 at ¶¶ 78–83.) Civil conspiracy is an intentional tort where two or more people act "'for the purpose of

15

accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.'" *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102, 133 (1999) (quoting *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 23 (1998)); *see Midwest Enterprises, Inc v. Noonan*, 2015 IL App (1st) 132488, ¶ 82. A claim for civil conspiracy "has the effect of extending liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted or encouraged the act." *McClure*, 188 Ill. 2d at 133; *see Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994).

The elements of civil conspiracy are: (1) the defendant entered into an agreement with one or more persons to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means; (2) a tortious act was committed in furtherance of the agreement; and (3) the plaintiff suffered an injury that was caused by the defendant. *See Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 49; *see also McClure*, 188 Ill. 2d at 133. To adequately allege a civil conspiracy claim, the "complaint must allege the 'necessary and important element' of an agreement." *Redelmann v. Claire-Sprayway, Inc.*, 375 Ill. App. 3d 912, 924 (2007). The gist of such a claim is the tortious act performed in furtherance of the agreement, not the agreement itself. *See Adcock*, 164 Ill. 2d at 63. Further, to survive a motion to dismiss, the complaint cannot simply characterize the combination of acts as a conspiracy. *See id.* at 923. That said, "a plaintiff is not required to plead with specificity and precision the facts that are within the defendant's control and knowledge." *Time Savers*, 371 Ill. App. 3d at 771 (citing *Adcock*, 164 Ill. 2d at 66).

Plaintiffs stated claims for common law fraud and promissory fraud in Count I, so they already alleged that a tortious act occurred that resulted in damages. The question that remains is whether Defendants had an agreement amongst each other to "accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Merrilees*, 2013 IL App (1st)

16

at ¶ 49. First, Plaintiffs alleged that at some point Tom Weiss and Michael Patierno began working together to shut down Drink Blocks. (Dkt. 1 at 29.) Furthermore, Marcie and Tom Weiss entered into a Consent Agreement to close down Drink Blocks in order to turn over the company assets to Beverage Blocks and evade paying Plaintiffs back. *Id.* at 26. Michael Patierno knew about the Drink Blocks situation and subsequently created Beverage Blocks, which is essentially a continuance of Drink Blocks. *Id.* at 34–35. These alleged facts, when looked at in total, demonstrate that Defendants had an arrangement to work together to defraud Plaintiffs. The timing, standing alone, strongly suggests that this was not a coincidence. *Id.* 34–35.

Defendants retort that this claim still fails under both the agent-of-a-disclosed-principal rule and the intra-corporate conspiracy rule. (Dkt. 49 at 8–9.) On the one hand, the intra-corporate conspiracy doctrine states that corporate agents acting within the scope of their employment can be held "capable of conspiring when they act on their own behalf or with an independent personal stake in the corporate action." *Hartman v. Board of Trustees of Community College Dist. No. 508, Cook County Ill.*, 4 F.3d 465, 470 (7th Cir. 1993) (internal quotations and citations omitted). On the other hand, an "agent of a disclosed principal is not personally bound by the terms of the contract which he executes in behalf of his principal unless he agrees to be personally liable." *Knightside Realty Partners, Ltd.-75 v. Pace*, 101 Ill. App. 3d 49, 53 (1981).

Here, the Plaintiffs allege that Defendants were acting in their personal capacities when they made their false statements, not as representatives of the corporation. Indeed, they defrauded Plaintiffs for their own, personal benefit—to claim Plaintiffs' investments for themselves and not repay the debt. Therefore, the intra-corporate conspiracy doctrine does not apply to bar Plaintiffs' civil conspiracy claim. Similarly, the agent-of-a-disclosed-principal rule does not apply because,

as Plaintiffs alleged, Defendants were acting in their own self-interest, not for the benefit of Drink Blocks.

VI.     **Rule 12(f) Motion: Strike Attorney's Fees Requests and Other Prejudicial Material**

In their prayer for relief on all four counts, Plaintiffs request attorney's fees. (Dkt. 1 at 11, 13, 15, 16.) Defendants moved to strike the attorneys' fees claims from the Complaint under Rule 12(f). (Dkt. 49 at 12–13.) Plaintiffs did not contest this motion in their response brief. Defendants also move to strike paragraphs 1, 10–16, 44–46, and Exhibit A of the Complaint. These sections allege that Defendants stole the intellectual property and proprietary information for the stackable drink boxes and other company assets. (Dkt. 49 at 11–12.) Defendants argue that these facts are irrelevant to this lawsuit and could prejudice Defendants.

Under Rule 12(f), the Court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). While motions to strike are generally disfavored, they may be used to expedite a case and "remove unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991). For the court to grant a motion to strike a portion of the complaint, the movant must demonstrate "the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration." *Cumis Ins. Soc., Inc. v. Peters*, 983 F.Supp. 787, 798 (N.D. Ill. 1997) (quoting *Trustmark Life Ins. Co. v. University of Chicago Hosps.*, 1996 WL 68009, at *1 (N.D. Ill. Feb. 14, 1996)).

First, the attorney's fees. Because jurisdiction in this case is based on diversity of citizenship, the Court looks to Illinois state law. *See Champion Parts, Inc. v. Oppenheinmer & Co.*, 878 F.2d 1003, 1006 (7th Cir. 1989). In Illinois, absent a statute or contractual agreement,

18

attorney's fees and the ordinary expenses of litigation are not awarded to the successful party. *See id.*; *see also Riley Acquisitions, Inc. v. Drexler*, 946 N.E.2d 957, 967 (Ill. App. Ct. 2011) (citing *Kerns v. Engelke*, 390 N.E.2d 859, 865 (Ill. 1979)). Plaintiffs fail to identify any such statute or contractual agreement; thus, they are not entitled to recover attorney's fees. *See, e.g.*, *Batteast Constr. Co. v. Pub. Bldg. Comm'n of Chi.*, 195 F. Supp. 2d 1045, 1052 (N.D. Ill. 2001) (striking request for attorney's fees under Illinois law). The Court accordingly grants Defendants' motion to strike Plaintiffs' request for attorney's fees.

      Second, the prejudicial material. Defendants offer no specific case law that supports their position concerning the specific facts they wish to strike. (Dkt. 49 at 11–12.) Plaintiffs, for their part, lend little support indicating why the Court should not grant Defendants' motion. (Dkt. 50 at 7–8.) Defendants argue that Plaintiffs' allegations have no relevance to the fraud, conversion, or conspiracy claims. (Dkt. 49 at 12.) But they fail to say *why* they are irrelevant. *See Cumis*, 983 F. Supp. at 798. The portions of the Complaint that allege Defendants falsely claimed they owned the intellectual property of Drink Blocks are relevant because they help explain why Plaintiffs would have agreed to loan Drink Blocks funds. For these reasons, the Court denies Defendants' Rule 12(f) motion to strike paragraphs 1, 10–16, 44–46, and Exhibit A of the Complaint.

## CONCLUSION

For the reasons set forth above, the Court denies Defendants' Rule 12(b)(7) motion to dismiss, grants Defendants' Rule 12(b)(6) motion to dismiss Counts II and III but denies it as to Counts I and IV, and grants Defendants' Rule 12(f) motion to strike Plaintiffs' request for attorney's fees but denies it in all other respects

_____
Virginia M. Kendall
United States District Judge

Date: November 2, 2018